1
2
3
4
5
6
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
7
CHRISTYANNA KARPENSKI,
8
                              Plaintiff,          Case No. C12-1569 RSM
9
         v.                                       ORDER ON MOTIONS
10
AMERICAN GENERAL LIFE COMPANIES,
LLC, d/b/a AMERICAN GENERAL, d/b/a AG
11
BENEFIT SOLUTIONS CONNECTICUT
CLAIM CENTER; THE UNITED STATES LIFE
12
INSURANCE COMPANY IN THE CITY OF
NEW YORK, d/b/a US LIFE; and SEABURY &
13
SMITH, INC., d/b/a MARSH U.S. CONSUMER,
d/b/a MARSH AFFINITY GROUP SERVICES
14
                              Defendants.
15
16
        THIS MATTER comes before the Court on Motion for Partial Summary Judgment by
17
Plaintiff (Dkt. # 142), Motion for Summary Judgment by Defendants (Dkt. # 145), and
18
Motions to Strike (Dkt. ## 155, 170, 174-1, 178). Having considered the parties' pleadings
19
and responses, including supplemental briefing solicited by the Court, as well as the
20
remainder of the record, and having heard oral argument on this matter, the Court denies
21
Plaintiff's Motion in part and defers its ruling on the parties' breach of contract and rescission
22
claims pending further briefing as specified herein.
23
                              **Background**
24
        Plaintiff Christyanna Karpenski, a physical therapist, filed this action for breach of
25
contract, breach of covenant of good faith and fair dealing (bad faith) and violation of the
26

Washington Insurance Fair Conduct Act ("IFCA") in King County Superior Court. Plaintiff Karpenski's claims arise out of a policy of disability insurance issue to Plaintiff, as a member of American Physical Therapy Association ("APTA"), by Defendant United States Life Insurance Company ("US Life"). Defendants properly removed this controversy to the Western District of Washington under this Court's diversity jurisdiction. *See* Dkt. # 1.

On February 15, 2009, Karpenski, a resident of Washington, applied for Long Term Disability coverage under a group policy issued by Defendant US Life, a New York company, to APTA, an association headquartered in Virginia (Dkt. # 191, p. 4). The Master Policy contains a choice-of-law provision providing that the "policy is issued in and governed by the laws of [] Virginia." Dkt. # 171, Ex. Q, p. 4. In order to procure individual coverage under the group Master Policy, Karpenski filled out and signed a Disability Insurance Application ("Application"). The Application contained a "good health provision," which states, "Insurance will take effect only if a Certificate is issued based on this Application and the first premium is paid in full while there is no change in the insurability or health of such person from that stated in the Application." Dkt. # 150-1, Ex. 2, p. 4. Plaintiff also filled out and signed a one-page "Polyp Questionnaire" as requested by US Life. *See* Dkt. # 146, ¶ 23. US Life, via its third party administrator, Seabury & Smith, Inc., subsequently issued and delivered a Certificate of Insurance ("Certificate") to Karpenski in a letter postmarked June 4, 2009 with an effective date of May 1, 2009. Dkt. # 122, Ex. 3; Dkt. # 143-1, Ex. A; Dkt. # 144, Ex. B, p. 12. The Certificate does not contain a choice-of-law provision but does specify that it is "a summary of the group policy provisions which affect your insurance. It is merely evidence of the Insurance provided by such policy." The Certificate also clarifies that the benefits described in it are "provided by group policy no. G-610.296, issued to [APTA]." Dkt.

1   # 122-1, Ex. 3, p. 18.

2   It is undisputed that US Life did not include a copy of Karpenski's signed application

3   in the Welcome Packet containing her Certificate of Insurance. Dkt. # 143, ¶¶ 5-7. According

4   to Plaintiff, she did not receive a copy of her Application until sometime after US Life denied

5   her claim for benefits. Dkt. # 143, ¶¶ 6-7. The date at which Plaintiff paid her first premium

6   is, however, in dispute. *See* Dkt. # 145, p. 17 (claiming Karpenski paid first premium after

7   June 2009); Dkt. # 168, ¶ 3 (Karpenski cannot recall when first premium was paid); Dkt. #

8   150, p. 35, ln. 3-11; Dkt. # 171-19, Ex. T, p. 3.

9

10   Plaintiff submitted a notice of claim to her policy administrator in early June, 2009,

11   due to disability arising from ulcerative pancolitis. Complaint, Dkt. # 1, Ex. 2, ¶¶ 26-28. Upon

12   receiving a proof of claim form, Plaintiff filed a claim for benefits on September 10, 2009,

13   disclosing that she was first treated by a physician for the present disability on May 6, 2009

14   and reporting that her total disability commenced on May 20. Dkt. # 144, Ex. F. As Karpenski

15   filed the claim within two years of the commencement of coverage, American General elected

16   to conduct a "contestable review" and sent Karpenski a Disability Claim Questionnaire about

17   her medical and treatment history, which she returned on November 14, 2009.  Dkt. # 144,

18   Ex. G, p. 7; Ex. J. On March 25, 2010, American General formally informed Karpenski that

19   her claim had been referred to medical underwriting for contestable review. *See* Dkt. # 144,

20   Ex. K.

21

22   American General informed Plaintiff via a letter dated May 11, 2010 that it had

23   determined to deny all benefits in connection with her disability claim and rescind her LTD

24   coverage. Dkt. # 144, Ex. N. The letter stated as grounds for rescission Karpenski's failure to

25   disclose a history of joint and musculoskeletal disorders. *Id.* at p. 3. The letter noted several

26

undisclosed reports by Plaintiff to physical therapists and medical practitioner Dr. Jena Schliiter of conditions including localized shoulder pain, low back pain, ligamentous laxity, and lumbar spondylolisthesis. *Id.* In their Motion for Summary Judgment, Defendants raise additional grounds for rescission based on Plaintiffs' medical records and depositions of her healthcare providers, including Plaintiff's knowing misrepresentations of her alleged menstrual disorder, recurrent headaches, chronic fatigue, thyroid disorder, and mental and emotional problems. *See* Dkt. # 145. According to American General case manager Latoya Keatts, the claim would have been approved but for contestation by medical underwriting. *See* Dkt. # 144, Ex. I, p. 10. Plaintiff and her husband, Ryan Allmon, unsuccessfully appealed the rescission decision to US Life and American General, including through letters dated October 15, 2010 and March 15, 2011. *See* Dkt. # 175-2, Ex. 3, 4.

Plaintiff filed her claim for breach of contract, bad faith, and violation of the IFCA in state court on August 15, 2012. Dkt. # 1, Ex. 2. Defendants removed the action to this Court and filed an answer with a counterclaim for declaratory relief, asking that the policy be deemed void *ab initio* and rescinded as a result of material misrepresentations on Plaintiff's Disability Application. *See* Dkt. # 6, ¶ 9. Upon motion by Defendants, the Court bifurcated the case and has stayed discovery on Plaintiff's bad faith and extra-contractual claims pending resolution of the breach of contract and rescission claims. *See* Dkt. # 41. Plaintiff now moves the Court to enter partial summary judgment against US Life precluding it from introducing Karpenski's Application into evidence because of US Life's failure to attach it to her Welcome Packet. Plaintiff also moves the Court to find that US Life is precluded from rescinding her insurance coverage because she had no intent to deceive and to find US Life in breach of contract. *See* Dkt. # 142. Upon their motion for summary judgment, Defendants

move the Court to order that Plaintiff's coverage be rescinded based on alleged material, knowing misrepresentation on her insurance application made with intent to deceive and to find coverage void under the Application's "good health provision." The parties also state eight separate motions to strike. Upon hearing oral argument on both parties' summary judgment motions, the Court solicited supplemental briefing as to whether Virginia or Washington law governs the contract and as to the requirements of the controlling application attachment statute under Washington law. *See* Dkt. # 188.

### Analysis

**A. Motions to Strike**

1) <u>Erratas/Jurats for Lydia Lybinsky, Wesley Jarvis, and Latoya Keatts</u>

Through her Reply in Support of Motion for Partial Summary Judgment (Dkt. # 155, pp. 3-4), Plaintiff moves the Court to strike erratas/jurats for Lydia Labinsky, Wesley Jarvis, and Latoya Keatts submitted by Defendants with their responsive brief (Dkt. # 152, Ex. 1, 3, 8), on the grounds that they are sham affidavits and contradict prior testimony. Federal Rule of Civil Procedure 30(e) governs review of deposition transcripts and changes thereto. It provides that a deponent "must be allowed 30 days after being notified by the officer that the [deposition] transcript is available in which: (a) to review the transcript or recording, and; (b) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." *See* Fed. R. Civ. P. 30(e). The Ninth Circuit has clarified that the thirty-day correction clock begins to toll upon notification of availability, not possession of the transcript or recording. *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1224 (9th Cir. 2005). While "missing the thirty day deadline by a mere day or two

might not alone justify excluding the corrections in every case," the basis for excluding late jurata is strengthened when compounded by other violations of Rule 30(e). *Id.*

In the Ninth Circuit, Rule 30(e) deposition errata are subject to the "sham rule," which precludes a party from creating "an issue of fact by an affidavit contradicting his prior deposition testimony." *Hambleton*, 397 F.3d at 1225 (internal citations omitted). *See also*, *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). "While the language of FRCP 30(e) permits corrections in 'form or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment." *Hambleton*, 397 F.3d at 1225. The Ninth Circuit treats "sham" corrections through errata as akin to "sham" affidavits as they are similar in purpose and effect. *Id.*

The Court may strike jurats as "sham" testimony upon making a finding of fact that they "flatly contradict earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment." *Kennedy v. Allied Mut. Ins. Co.*, 9562 F.2d 262, (9th Cir. 1991). In determining whether a deposition errata constitutes a sham, courts consider circumstances including the number of corrections, whether the corrections fundamentally change the prior testimony, the impact of the corrections on the cases (including whether they pertain to dispositive issues), the timing of the submission of corrections, and the witness's qualifications to testify. *Lewis v. The CCPOA Benefit Trust Funds et al.*, 2010 WL 3398521, *2 (N.D. Cal. 2010). *See also*, *Johnson v. CVS Pharmacy, Inc.*, 2011 WL 4802952, *3 (N.D. Cal. 2011); *Hambleton*, 397 F.3d at 1225 (considering the "tactical timing" of corrections submitted after motion for summary judgment was filed). Even where a court finds that errata are not shams, the court may still strike portions that constitute contradictory rather than

corrective changes. *See Hambleton*, 397 F.3d at 1226 (holding that "Rule 30(e) is to be used for corrective, and not contradictory, changes"); *Johnson*, 2011 WL 4802952, at *4.

Plaintiff contends that the errata should be stricken in their entirety as shams. Plaintiff argues that "none of the statements provided in defendants erratas/jurats were uttered during the depositions," and consequently cannot be understood as "simply errors in transcription," which could permit a contradictory change. *See* Dkt. # 155, p. 3 (citing *Hambleton*, 398 F.3d at 1225). Defendants do not deny that the changes might be contradictory but rather contend that Rule 30(e) permits substantive changes through errata and furthermore that the timing of the errata was not suspect, as they were provided to Plaintiffs several months before the instant motion. Dkt. # 158, p. 4.

The question of whether the errata are shams may be determined as a factual matter upon oral argument. Plaintiff has not alleged that the errata are untimely, although they were submitted between March 15 and March 20, 2013, almost two months after the depositions were taken (between January 29 and January 31, 2013). Timing aside, several factors cut in favor of a finding that the depositions constitute shams, including the extensiveness of corrections, the fundamental changes they introduce to prior testimony, and the impact of the corrections. Errata for Lydia Labinsky introduce 29 changes to deposition testimony, errata for Wesley Edmond Jarvis introduce 45 changes, and errata for Latoya Keatts introduce 16 changes. *See* Dkt. # 152, Ex. 1, 3, 8. While a number of the changes constitute minor clarifications, others directly contradict former testimony or add material that is potentially case-dispositive. For instance, Labinsky changed one answer from "no" to yes" and one from "yes" to "no," directly contradicting her deposition testimony. *See* Dkt. # 152, Ex. I (contradictory changes to pages 24 and 31 of deposition). Wesley Jarvis in his original

deposition testified that US Life solely claimed that Plaintiff misrepresented disorders related to her neck and back. His errata extend the alleged known misrepresentations significantly to include "recurrent headaches, thyroid disorder, menstrual disorder, and recurrent polyps." *See* Dkt. # 156, Ex. R, p. 3. Latoya Keatts changed several answers from "yes" to "no" or to "I don't know." *See* Dkt. # 152, Ex. 8. She also made a substantial change to a response that significantly impacts the question of Karpenski's intent and US Life's knowledge thereof, adding "on that form," after her answer, "I don't think that she was trying to conceal anything." *See* Dkt. # 156, Ex. R, p. 4; Dkt. # 152, Ex. 8.

The witnesses' qualifications to testify also weigh in favor of striking. Lydia Labinsky is Associate Director at American General and Manager of the Underwriting Department and substantially qualified to speak on the topics she addressed in her deposition. Dkt. # 144, Ex. H, pp. 3-5.  Wesley Jarvis is Vice-President for AIG Benefits and US Life's Rule 30(b)(6) designee for the case. As a sophisticated Rule 30(b)(6) designee, his extensive corrections are particularly suspect. *See Lewis*, 2010 WL 3398521, at *4 ("That a deposition should not be treated as a take home exam is particularly true…where the deponent is not an unsophisticated witness but rather a 30(b)(6) designee who has submitted extensive declarations in the course of this litigation.").  All three deposition transcripts reflect clear and consistent answers and fail to manifest any confusion that could have merited post-deposition correction. *See* Johnson, 2011 WL 4802952, at *4 (refusing to strike errata where deponent was unsophisticated and the record replete with internal contradictions and indications of her confusion). The only factor that significantly militates against a finding that the errata are shams is the fact that they were provided to Plaintiff prior to the motion for summary judgment.

1    Taking all these factors into account, the Court finds that errata/jurats for Lydia

2    Labinsky, Latoya Keatts, Wesley Jarvis (*See* Dkt. # 152, Ex. 1, 3, 8) constitute sham

3    affidavits that constitute contradictory rather than corrective testimony and exceed the scope

4    of changes permitted to deposition testimony under Rule 30(e). Deposition errata/jurats shall

5    consequently be STRICKEN.

6        2)   <u>Declaration of Lydia Labinsky</u>

7

8        Upon response to Defendant's motion for summary judgment (Dkt. # 170), Plaintiff

9    moves the Court to strike declaration of Lydia Labinsky (Dkt. # 147) under the "sham"

10   affidavit rule. Plaintiff contends that Labinsky's declaration, discussing multiple bases for

11   rescission, contradicts her deposition testimony, which discussed exclusively neck and back

12   pain as the basis for US Life's decision to rescind. *Compare* Dkt. # 147 with Dkt. # 171, Ex.

13   H, Labinsky Dep., 64:20-65:5. Plaintiff also contends that Labinsky's declaration should be

14   stricken on the grounds that it offers inadmissible speculative testimony.

15

16       Upon review of the record, the Court declines to strike the declaration. Labinsky's

17   declaration does not directly contradict her former testimony: rather than asserting that US

18   Life decided to rescind Plaintiff's application on the additional bases, Labinsky's declaration

19   merely testifies to the materiality of such health conditions to US Life's coverage decision.

20   The two pieces of testimony thus relate to substantially distinct subjects. Moreover, the

21   speculative nature of Labinsky's testimony may be grounds for the Court to discount its

22   weight in evidence but does not merit striking the affidavit in its entirety on sham grounds.

23   Consequently, Plaintiff's motion to strike will be denied.

24       3)   <u>Declarations by Plaintiff's Health Care Providers and Co-Workers</u>

25

26

Upon reply, Defendants move to strike affidavits by Plaintiff's health care providers and co-workers (Dkt. ## 161-166) filed in opposition to Defendants' motion for summary judgment. Dkt. # 174-1, pp. 13-16. Defendants contend that the declarations should be stricken in their entirety as they offer only conclusory statements about Plaintiff's lack of contested health disorders. Defendants also move to strike the declaration by Plaintiff's husband, Mr. Allmon (Dkt. # 167), on the grounds that it offers unqualified, conclusory opinion testimony about Plaintiff's medical status. Defendants further move to strike two statements by Plaintiff's treating physicians, Dr. Schliiter and Dr. Paroo (Dkt. # 164, Schliiter Dep, ¶ 9; Dkt. # 162, Paroo Dep, ¶ 11.), on the grounds that they conflict with their prior testimony.

The Court denies Defendants' motion to strike the affidavits in their entirety. Conclusory testimony is insufficient to defeat a summary judgment motion. *See Timeline, Inc. v. Proclarity Corp*, 2007 WL 1574069, at *8 (W.D. Wash. 2009). The Court may discount such conclusory statements in considering a summary judgment motion and need not strike the declarations in their entirety. The Court also declines to strike the specific statements by Dr. Schliiter and Dr. Paroo as they do not contradict former testimony. In her deposition, Dr. Schliiter states that she "assessed" Plaintiff for autoimmune thyroid disorder but does not claim to have diagnosed her with the condition. *See*, Dkt. # 150, Ex. 28, p. 42. Similarly, Dr. Paroo discussed in deposition her recommendations to Plaintiff for help with emotional problems but does not state that she diagnosed a disorder. *See* Dkt. # 150, Ex. 13, pp. 81-82.

4)   New Evidence and Case Law References upon Reply

Pursuant to Local Rule 7(g) (permitting motions to strike in a surreply), Plaintiff moves

the Court to strike new evidence and case law references. Dkt. # 178, p. 3. The offending

material consists of 10 exhibits containing "92 pages of new evidence" submitted by

Defendants upon reply to their motion for summary judgment. Dkt. # 175, Ex. 1-10. As a

general rule, a "movant may not raise new facts or arguments in his reply brief." *Quinstreet,*

*Inc v. Ferguson*, 2008 WL 5102378, at *4 (W.D. Wash. 2008), citing *United States v. Puerta*,

892 F.2d 1297, 1300 n.1 (9th Cir. 1992). The Court agrees that Exhibits 7, 8, and 10,

introduced upon reply by Defendants in support of their rescission claims, should have been

introduced by Defendants in their opening brief. Consequently, Exhibits 7, 8, and 10 will be

stricken. In contrast, Defendants introduced Exhibits 1-6 upon reply in order to respond to

motions to strike asserted by Plaintiff's in their brief in opposition. Defendants also

introduced Exhibit 9 for the sole purpose of supporting their motion to strike declarations by

Plaintiff's co-worker physical therapists. The Court accordingly declines to strike exhibits 1-6

and 9.

    5)  <u>Choice-of-Law Argument</u>

      Through her surreply to Defendant's motion for summary judgment (Dkt. # 178), Plaintiff

moves the Court to strike Defendants' argument that Virginia, rather than Washington, law

governs her insurance contract based on a provision of the policy. *See* Dkt. # 174-1; Dkt. #

146-2, Ex. 29, p. 2. As a general matter, a movant may not raise new issues in a reply brief, as

doing so "essentially prevents [the non-moving party] from providing any response." *Wood v.*

*Household Finance Corp*., 341 B.R. 770, 773 (W.D. Wash. 2006). Nonetheless, the Court

declines to strike Defendant's argument regarding choice of law, where it is raised upon reply

in opposition to Plaintiff's motion to strike her Disability Application, and where the Court has provided both parties with extensive opportunities to engage choice of law through oral argument and supplemental briefing.

6) <u>Case Law Citations</u>

Plaintiff further moves the Court to strike several new case law references introduced by Defendant upon reply. Dkt. # 178, p. 4. The Court denies this motion as Plaintiff has failed to demonstrate that these citations raise new issues rather than expound on those already presented through Defendants' opening motion.

7) <u>Factual Averments</u>

Finally, Plaintiff moves the Court to strike several alleged factual misrepresentations by Defendants in their reply brief. Dkt. # 178, p. 4. Plaintiff moves the Court to strike Defendant's averment that Plaintiff "has conceded that [the first premium] was paid after she received her Welcome Package." *See* Dkt. # 174-1, p. 12. Plaintiff also moves to strike Defendants' statement that Dr. Paroo testified that Plaintiff had "an emotional problem that required treatment by a psychotherapist." *See Id*. The Court denies Plaintiff's motion to strike, as the allegedly infringing factual averments constitute interpretations of the factual record already before the Court and subject to the Court's independent scrutiny.

**B.  Standard of Review**

Federal Rule of Civil Procedure 56(a) permits parties to move for summary judgment on all or part of their claims. Summary Judgment is proper where "the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those that may affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a motion for summary judgment, the court does "not weigh the evidence or determine the truth of the matter but only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco*, 41 F.3d 547, 549 (internal citations omitted).

The moving party bears the initial burden of production and the ultimate burden of persuasion. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party must initially establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party defeats a motion for summary judgment if she "produces enough evidence to create a genuine issue of material fact." *Nissan Fire*, 969 F.2d at 1103. By contrast, the moving party is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" at trial. *Celotex*, 477 U.S. at 322. Conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F.3d 337, 345 (9th Cir. 1995). "[T]he inferences to be drawn from the underlying facts…must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### C. Attachment Statute Claim and Choice of Law

Plaintiff's claim that her insurance Application should be stricken from evidence due

to Defendants' failure to attach it to her Certificate when issued (Dkt. ## 142, 170) raises a threshold choice-of-law question. The parties do not dispute that the Master Policy under which Plaintiff's Certificate of Insurance was issued contains a choice-of-law provision providing that it is issued and governed under the laws of Virginia. *See* Dkt. # 189, p. 2; Dkt. # 190, p. 2; Dkt. # 171, Ex. Q, p. 4.  Defendants contend that the Policy's choice-of-law provision should be upheld and Virginia law should govern whether Plaintiff's insurance application should have been attached to her Certificate. In her supplemental brief, Plaintiff contends that Washington law should apply where application of Virginia law would violate a fundamental public policy of the forum state.

Because this Court exercises diversity jurisdiction in this case, Washington's conflict of law rules apply. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-96 (1941). Washington courts generally enforce choice-of-law provisions. *Schnall v. AT&T Wireless Services, Inc.*, 171 Wash.2d 260, 259 P.3d 1291, 131-32 (2011)(internal quotations and citations omitted).

In the instant matter, though the choice-of-law provision is found in the Master Policy rather than the Certificate of Insurance, it governs both. The Supreme Court, in *Boseman v. Connecticut Gen. Life Ins. Co.*, 301 U.S. 196 (1937), held that a choice-of-law provision in a group insurance policy governed the individual insured's coverage as manifested by a certificate of insurance. The Supreme Court explained that

"The certificate is not a part of the contract of, or necessary to, the insurance. It is not included among the documents declared to constitute the entire contract of insurance. It did not affect any of the terms of the policy. It was issued to the end that the insured employee should have the insurer's statement of specified facts in respect of

protection to which he had become entitled under the policy. It served merely as evidence of the insurance of the employee. [Plaintiff's] rights and [the insurance company's] liability would have been the same if the policy had not provided for issue of the certificate."

*Boseman*, 301 U.S. at 203.

As in *Boseman*, the instant Master Policy does not declare the Certificate of Insurance to constitute part of the contract, and the Certificate does not alter any of the Master Policy's terms. *See* Dkt. # 156-2, Ex. S, p. 28. Where a provision of the Certificate of Insurance conflicts with the Master Policy, the Certificate will ordinarily be held to control. *See Fritto v. Lincoln Nat. Life Ins. Co.*, 111 Wash.2d 46, 757 P.2d 1274, 1378 (1988) (concluding that "as a matter of public policy, insurance companies operating under a statutory mandate to issue certificates of coverage to holders of group insurance policies will be held to the terms it chooses to place in the certificate."). Here, Karpenski's Certificate of Insurance does not contain a choice-of-law provision that contradicts that found in the Master Policy. By contrast, it expressly puts the individual insured on notice that the "certificate of insurance provides coverage under a group master policy that may be issued to an out-of-state group," and further that the insured "may not receive all of the protections provided by a policy issued in your state of residence and governed by all the laws of that state." Dkt. # 122-1, Ex. 3, p. 18. Where, as here, the Certificate and Master Policy do not conflict, and the Certificate puts the individual insured on notice of the relevant provision in the Master Policy, the Court gives effect to the provisions of the Master Policy.

The Court's determination that Virginia law governs Karpenski's individual coverage is undergirded by the unique choice-of-law rules that apply in the group insurance policy

context. "Rights against the insurer under a group policy are generally governed by the law of the state where the master policy was delivered." *Erickson v. Sentry Life Ins. Co.*, 43 Wash.App. 651, 719 P.2d 160, 162 (1986). The rationale behind this rule recognizes that "it is desirable that each individual insured should enjoy the same privileges and protection." Restatement (Second) of Conflict of Laws § 192, comment h (1971).   When coupled with a choice-of-law provision, this rule gives effect to the "purpose of the parties to the contract that everywhere it shall have the same meaning and give the same protection, and that inequalities and confusion liable to result from applications of diverse state laws shall be avoided." *Boseman*, 301 U.S. at 206. The validity of a choice-of-law provision is even more likely to be upheld in the group disability insurance context than the individual insurance context due to the stronger bargaining position that the organization procuring the master policies possesses relative to the individual. Restatement § 192, comment h (explaining that the choice-of-law provision for a group disability insurance contract "is less likely to have a 'take-it-or-leave-it' character").

Giving effect to the choice-of-law provision in the Master Policy is also consistent with the results reached by courts in other states. *See, e.g.*, *Hofeld v. Nationwide Life. Ins. Co.*, 322 N.E. 2d 454, 460 (Ill. 1975)("The prevailing view is that a choice of law made in the basic group policy will be honored by the courts, particularly where the selection is the state of the group policy holder."); *Silvest v. Monumental General Ins. Co.*, 998 F.2d 1016, at *3 (7th Cir. 1993)(explaining that "as long as the choice of law provision to be applied does not conflict with the public policy of Illinois and the certificate does not contain a provision that conflicts with the master policy, the master policy's provision will be applied); *Kahn v. Great-West Life Assur. Co.*, 61 Misc.2d 918, 307 N.Y.S.2d 238 (1970)(enforcing choice of

law provision for group disability insurance policy even where law of forum state would

strike the application from evidence under New York attachment statute); *Lindstrom v. Aetna*

*Life Ins. Co.*, 203 N.W.2d 623 (Iowa 1973); *Monson v. Life Ins. Co. of No. Am.*, 558 F.Supp.

1354 (D. Nev. 1983).

Plaintiff argues that even if the Court finds the Master Policy's choice-of-law

provision to be applicable, it should refuse to enforce it where doing so would contravene

Washington public policy.  Plaintiff thereby moves the Court to engage in a conflict of law

analysis to determine whether the selection of Virginia law will be upheld with regards to

Plaintiff's attachment statute claim.

The threshold question in a Washington choice-of-law analysis is whether there is an

actual conflict between the laws or interest of Washington and that of another state. *Erwin v.*

*Cotter Health Cetners*, 161 Wash.2d 676, 167 P.3d 1112, 1120 (2007). A "real conflict"

exists where the result of a particular issue would be different under the law of the two states.

*Id.*, citing *Seizer v. Sessions*, 132 Wash.2d 642, 648, 940 P.2d 261 (1997). Where an actual

conflict exists, Washington courts apply section 187 of the Restatement (Second) Conflict of

Laws (1971) to determine whether the parties' contractual choice-of-law provision is

effective. The Restatement provides, in relevant part:

> (2) The law of the state chosen by the parties to govern their contractual rights and
>
> duties will be applied, even if the particular issue is one which the parties could not
>
> have resolved by an explicit provision in their agreement directed to that issue,
>
> unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the
> >
> > transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a

fundamental policy of a state which has a materially greater interest than

the chosen state in the determination of the particular issue and which,

under the rule of § 188 would be the state of the applicable law in the

absence of an effective choice of law by the parties.

Accordingly, in order to "effectively void a choice of law provision, a court must find that the

chosen state has no substantial relationship to the parties *or* that the application of the chosen

law would be contrary to a fundamental policy of" the state with a materially greater interest

than the chosen state and which would otherwise be the state of the applicable law. *Schnall*,

259 P.3d at 132, citing *Erwin*, 167 P.3d at 1122.

As to the threshold question, the Court is not persuaded that a conflict exists between

the applicable Virginia and Washington attachment statutes. As an initial matter, the Court

finds that RCW 48.21.060, rather than RCW 48.18.080(1) as argued by Defendants, governs

the attachment of Karpenski's Application under Washington law. RCW 48.18.080(1)

provides that "No application for the issuance of any insurance policy or contract shall be

admissible in evidence in any action relative to such policy or contract, unless a true copy of

the application was attached to or otherwise made a part of the policy when issued and

delivered." RCW 48.18 deals with insurance contracts generally while RCW 48.21 governs

aspects of group and blanket disability insurance in particular. RCW 48.21.060 mandates

specific requirements for the furnishing of an individual insured's application under a group

disability policy. As the more specific statute, RCW 48.21 is not displaced by the later

amended, more general RCW 48.18. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148,

153 (1976) ("It is a basic principle of statutory construction that a statute dealing with a

narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum."). It is also clear that RCW 48.18.080(1) is inapposite in light of the facts of this case. The attachment requirement of RCW 48.18.080 applies in instances where the actual *insurance policy* was provided to the insured. In the instant case, as is typical under group disability insurance coverage, Plaintiff received only a *certificate of insurance* rather than the APTA policy itself when US life issued and delivered her disability insurance in 2009. *See* Fritto, 111 Wn.2d at 52 ("the individual certificate is the only instrument which the employee sees at any time.")(internal quotation omitted); Karpenski Decl., Dkt. # 143, Ex. A, ¶ 7 (stating that US Life only delivered a certificate of insurance when it issued Plaintiff's disability insurance).

Both parties agree that under Virginia law, Va. Code Ann. § 38.2-3529 governs the admissibility of Karpenski's Application. Section 38.2-3529 provides, in relevant part, that each group accident and sickness insurance policy shall contain a provision stating that:

> A copy of any application of the policy owner shall be attached to the policy when issued; … [and] [n]o written statement made by any person insured shall be used in any contest unless a copy of the statement is furnished to the person or to his beneficiary or personal representative.

Washington's attachment statute for group disability insurance policies is nearly identical. RCW 48.21.060 provides, in relevant part, that:

> There shall be a provision that a copy of the application, if any, of the policyholder shall be attached to the policy when issued…and that no statement made by any individual insured shall be used in any contest unless a copy of the instrument containing the statement is or has been furnished to such individual….

Plaintiff concedes that the two statues are substantially similar. *See* Dkt. # 190, p. 2. The only difference between the two statutes is the addition of the words "or has been" to RCW 48.21.060. Defendants contend that the use of the disjunctive conjunction "or" between "is" and "has been" sets forth two ways by which an application may be furnished "in any contest:" 1) presently or 2) at some time prior to or during the contest. *See* Dkt. # 189, pp. 10-15, citing *Black v. National Merit Ins. Co.*, 15 Wn. App. 674, 688, 226 P.3d 175, 182 (2010)(noting that "'or' is most commonly used in the disjunctive and employed to indicate an alternative."). The Court agrees that per the plain meaning of RCW 48.21.060, "or" is used in the disjunctive sense. Where, as here, the Application is furnished to the individual insured, the requirements of both statutes are met. While neither Washington nor Virginia courts have interpreted either statute, courts of both states would be unlikely to reach a different result in doing so.

Plaintiff relies on *Whitaker v. Spiegel, Inc.*, 95 Wn.2d 408, 623 P.2d 1147, 1150, as amended 95 Wn.2d 661, 637 P.2d 235 (1981), to argue that Washington law must be applied to Plaintiff's attachment statute claim because doing so would contravene a fundamental public policy of forum state. Plaintiff's argument is unavailing. In *Whitaker*, a usury case, the Supreme Court of Washington invalidated the parties' choice of Illinois law to govern their contract because applying Illinois law would contravene the fundamental public policy expressed in RCW 19.52.020, providing a 12% ceiling on the rate that may be exacted for the loan or forbearance of any money. The *Whitaker* Court undertook a conflict of law analysis only upon acknowledging an actual conflict between the applicable law of Illinois and Washington: the contract provided for a 19.8% service charge, which was permissible under Illinois law but not under RCW 19.52.020. As explained supra, no such conflict is present in

this case where the applicable statutes of Washington and Virginia are substantially similar.

Furthermore, critical to the *Whitaker* Court's analysis was a Washington statutory provision, RCW 19.52.034, which specifically required that Washington's usury statutes be applied to all loans, whether made within or without the State. Washington possesses no similar statute for group disability policies. Plaintiff points to RCW 48.18.200, which voids any clause in an insurance policy "delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state" that requires the policy "to be construed according to the laws of any other state." However, unlike in *Whitaker*, this jurisdictional provision is inapplicable here, where the Master Policy was issued and delivered in Virginia rather than in Washington. *See* Dkt. # 156-2, Ex. S, p. 4 ("This policy is issued in and governed by the laws of [] Virginia"). As explained supra, Karpenski's Certificate merely serves as evidence of the Policy issued and delivered in Virginia, where the employer policyholder, APTA, is headquartered. *See Boseman*, 301 U.S. at 203 (explaining that the certificate of insurance "served merely as evidence of the insurance of the employee" and that its delivery to an individual insured in Texas "has no bearing upon the question whether Pennsylvania law or Texas law governs"). *C.f.*, *Guardian Life Ins. Co. of Am. v. Ins. Com'r of State of Md.*, 293 Md. 629, 446 A.2d 1140 (1982) (applying Maryland law despite issuance of master policy in Rhode Island where the employer policyholder was headquartered in Maryland and the master policy was issued to a multiple employer trust acting as an alter-ego for the insurance company). Group disability insurance coverage is unique such that, not withstanding RCW 48.18.200, "rights against the insurer under a group policy are generally governed by the law of the state where the master policy was delivered." *Erikson*, 719 P.2d at 162. Virginia law thus governs rights under Karpenski's insurance contract, including whether

her Application should have been attached to her Certificate.

Having found that Virginia law applies, the Court determines that Virginia law does not bar the introduction of Karpenski's application into evidence. Va. Code Ann. § 38.2-3529 nowhere states that failure to furnish an application with the insurance certificate precludes a group carrier from relying upon the application to disclaim coverage. Rather the statute provides that the Policy must state that no written statement made by the insurer may be used in any contest unless a copy of the same is furnished to the person. In the instant case, it is undisputed that Karpenski received her Application in connection with the rescission contest. *See, e.g.*, Dkt. # 175-2, Ex. 2 (letter dated June 3, 2010 referencing enclosure of Karpenski's entire claim file). Karpenski's statements made on her Application were in her possession during her appeals of US Life's decision. *See Id.* at Ex. 3, 4 (referencing ongoing appeals process).

*Southland Life Ins. Co. v. Donati*, 201 Va. 855, 114 S.E.2d 595 (1960), relied on by Plaintiff, supports, rather than contradicts, this conclusion. The statute at issue in *Southland*, Va. Code. Ann. § 38.1-393 (1950), provided that an insurer could not rely on any statement made by the insured unless it was "contained in a written application and unless a copy of such statement [] be endorsed upon or attached to the policy when issued." *Southland Life Ins. Co.*, 114 S.E.2d at 595. Similar to RCW 48.21.080(1), the *Southland* statute contained an explicit timing requirement, mandating that the application be attached to the policy "when issued." No such timing requirement is present in Va. Code Ann. § 38.2-3529. The difference between these two statutes further evidences the legislative intent that, according to the plain meaning of § 38.2-3529, group disability applications must simply be provided to the insured prior to or during the course of a contest. *See Breault v. Berkshire Life. Ins. Co.*, 821 F.Supp.

410, 414 n.5 (E.D. Va. 1993) ("Had the Virginia legislature intended to permit applicants to escape responsibility for misrepresentation contained in their applications in instances where certain policy language was not inserted, it would have specified that remedy in [the statute]… .").

This Court's decision to admit Karpenski's Application accords with the interpretation that several courts have given to statutory language similar to that of Va. Code Ann. § 38.2-3529 and RCW 48.21.060. In *Aliaga  v. Continental Assurance Co.*, 2006 WL 3290099, at *4 (D. N.J. 2006), the district court interpreted a virtually identical New Jersey statute to require that all statements made by the individual insured "are admissible as evidence in an action involving the policy so long as the insurance company provides a copy of the alleged misstatement prior to admitting it into evidence." The court contrasted the group disability attachment statute with the individual insurance attachment statute, similar to that considered in *Southland*. The court explained that having separate standards for admissibility "makes sense:"

> "[A] group policy is *not* a one-on-one contract with the insured – a group policy is issued to an organization, and members of that organization are eligible for coverage under that policy as a benefit of membership in that organization. As a consequence, group applications are short and ask general, yes-or-no questions. … While the insurance company has less information about each insured in a group policy, the risk is spread wide among a group of people. Because the group policy application is less critical, it is logical that the provisions governing admissibility… are less rigorous than those [for individual insured policies]."

*Id.* at * 5. Other jurisdictions have followed the rule that statutes similar to Va. Code Ann. §

38.2-3529 and RCW 48.21.060 require that a copy of the alleged misstatement be provided prior to admitting it into evidence during a contest. *See McGeehan v. Am. Gen. Assurance Co*, 2004 WL 2584670 (E.D. Pa. 2004); *Prousi v. Unum Life Ins. Co.*, 77 F.Supp. 2d 665, 558 (E.D. Pa. 1999); *Coleman v. Aetna Life Ins. Co.*, 261 F.2d 296, 299 (7th Cir. 1958).

This result is particularly appropriate where, as here, the individual insured completed the application herself and has had multiple opportunities to defend her alleged misstatements both to the insurance company and now to the Court. In *Johnson v. Prudential Ins. Co. of Am.*, 519 S.W. 2d 111, 114 (Tex. 1975),  the Court interpreted a similar attachment statute to require that, for group life insurance policies, the insurer "promptly furnish" the individual insured or his beneficiary a copy of his application. The *Johnson* court was concerned with preventing a situation where an application for insurance is "filled out or written by an insurance agent or others and only signed by the insured." Such a situation is not present in the instant case. *See also*, *Manz v. Continental Am. Life. Ins. Co.*, 119 Or. App.31, 849 P.2d 549 (1993)(construing RCW 48.21.060 in light of *Johnson*). Moreover, the concern presented in the context of group life insurance contracts, that the individual insured have the opportunity to correct and defend any misrepresentations during her lifetime, is not present with respect to Karpenski's group disability application. *C.f. Layman v. Continental Assur. Co.*, 430 Pa. 134, 242 A.2d 356, 258 (Penn. 1968)(following the decision of New York courts to construe similar attachment language to require that the company furnish the application before the insured's death under a life insurance policy).

For all these reasons, the Court finds that in this case, the requirement of the applicable attachment statute has been met where Plaintiff received the group Disability Application that she herself filled out during the contest with her insurance company. The

Court therefore finds Plaintiff's Application admissible and denies Plaintiff's motion to strike it from evidence.

**D. Rescission, Breach of Contract, and Violation of Good Health Provision**

Defendants claim that they are entitled to rescind Plaintiff's Application based on alleged misrepresentations as well as her alleged violation of the good health provision in her Application. Plaintiff contends that US Life's decision to rescind her disability insurance coverage constitutes breach of contract. Both parties have briefed these issues with respect to Washington statutory and case law under the assumption that Washington law governs the parties' rights under Karpenski's insurance contract. As the Court has found the Master Policy's choice-of-law provision valid and enforceable, it will proceed to analyze the parties' remaining claims under Virginia law. Consequently, the Court defers summary judgment pending further briefing by the parties on the application of Virginia law to the remaining claims asserted in their respective motions for summary judgment.

## Conclusion

For the reasons stated herein, it is hereby ORDERED that:

(1) Plaintiff's Motion to Strike Erratas/Jurats for Lydia Lybinsky, Wesley Jarvis, and Latoya Keatts (Dkt. # 155, p. 3) is GRANTED.

(2) Plaintiff's Motion to Strike Declaration of Lydia Lybinski (Dkt. # 170, p. 19) is DENIED.

(3) Defendants' Motion to Strike Declarations by Plaintiff's Health Care Providers and Co-Workers (Dkt. # 174-1, p. 13) is DENIED.

(4) Plaintiff's Motion to Strike New Evidence (Dkt. # 178, p. 3) is GRANTED in part and DENIED in part. The Court strikes Exhibits 7, 8, and 10 (Dkt. # 175-3) submitted by

Defendants upon reply. The Court declines to strike Exhibits 1-6 and 9 (Dkt. ## 175-2, 175-3).

(5) Plaintiff's Motion to Strike Defendants' Choice-of-Law Argument (Dkt. # 178, p. 3) is DENIED.

(6) Plaintiff's Motion to Strike Case Law References (Dkt. # 178, p. 4) is DENIED.

(7) Plaintiff's Motion to Strike Factual Averments (Dkt. # 178, p. 4) is DENIED.

(8) Plaintiff's Motion for Partial Summary Judgment (Dkt. # 142) is DENIED in part to the extent that the Court finds that Plaintiff's Disability Application is admissible in this case as a matter of law. Plaintiff's Motion to Strike Karpenski's Disability Application from evidence (Dkt. # 170, p. 4) is similarly DENIED.

(9) All remaining claims are deferred pending further briefing on the application of Virginia law. Both parties are directed to file supplemental briefs of no more than twelve (12) pages on the application of Virginia law to the remaining claims for rescission, violation of the Application's good health provision, and breach of contract. Supplemental briefs shall be submitted within fourteen (14) days of the entry of this Order.

Dated this 14th day of February 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE