1
2
3
4
5
6

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

7

| | |
|---|---|
| CHRISTYANNA KARPENSKI,<br><br>               Plaintiff,<br><br>    v.<br><br>AMERICAN GENERAL LIFE COMPANIES,<br>LLC, d/b/a AMERICAN GENERAL, d/b/a AG<br>BENEFIT SOLUTIONS CONNECTICUT<br>CLAIM CENTER; THE UNITED STATES LIFE<br>INSURANCE COMPANY IN THE CITY OF<br>NEW YORK, d/b/a US LIFE; and SEABURY &<br>SMITH, INC., d/b/a MARSH U.S. CONSUMER,<br>d/b/a MARSH AFFINITY GROUP SERVICES<br><br>               Defendants. | Case No. C12-01569RSM<br><br>ORDER ON MOTIONS |

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

THIS MATTER comes before the Court on Motion for Partial Summary Judgment by Plaintiff (Dkt. # 142), Motion for Summary Judgment by Defendants (Dkt. # 145), and Motion for Reconsideration by Plaintiff (Dkt. # 197). On February 14, 2014, the Court denied Plaintiff's claim to exclude her group disability insurance application from evidence and deferred the parties' breach of contract and rescission claims pending supplemental briefing on the application of Virginia law. Having considered the parties' supplemental briefs, oral argument, the remainder of the record, and applicable case law, and for the reasons that follow, the Court hereby denies Plaintiff's Motion for Reconsideration and denies summary judgment on the remaining issues pending before it.

## **Background**

This matter arises out of the decision of Defendants American General Life Company ("American General") and The United States Life Insurance Company ("US Life") to rescind

the long term disability coverage of Plaintiff Christyanna Karpenski due to alleged misrepresentations made by her on her Disability Insurance Application ("Application"). A complete factual account of this matter is presented in the Court's Order of February 14, 2014, denying in part Plaintiff's Motion for Partial Summary Judgment. *See* Dkt. # 192, pp. 1-5. The Court therein determined that the choice-of-law provision in the American Physical Therapy Association ("APTA") Master Policy, under which Plaintiff procured coverage, selecting Virginia law as the governing law was valid and enforceable. The Court also denied Plaintiff's claim to preclude Defendants from introducing her Application into evidence because of Defendant US Life's failure to attach it to her Certificate of Insurance in her Welcome Packet.

As the parties had only briefed the application of Virginia law to the attachment claim raised by Plaintiff's partial summary judgment motion, the Court directed the parties to file further supplemental briefs on the application of Virginia law to the remaining contractual claims for rescission, violation of the Application's good health provision, and breach of contract. *Id.* at pp. 25-26. In denying Plaintiff's subsequent motion to stay briefing pending a motion for reconsideration, the Court clarified its previous Order by permitting the parties to additionally address whether Virginia and Washington law conflict with regards to the remaining claims. *See* Dkt. # 194, p. 2. Remaining before the Court are Plaintiff's claims in its Motion for Partial Summary Judgment that Defendants are precluded from rescinding her insurance coverage because they had no evidence of intent to deceive and for breach of contract. *See* Dkt. # 142. Also remaining are Defendants' claims in its Motion for Summary Judgment for rescission under RCW 48.18.090 and due to Plaintiff's failure to satisfy the "good health" provision in her Application. *See* Dkt. # 145.

On February 28, 2014, Plaintiff filed a Motion for Reconsideration, moving the Court to reconsider its Order of February 14, 2014 based on its application of Virginia law to the contractual claims presented in this case. Specifically, Plaintiff contends that: (1) the Court already ruled that Washington rescission law is the law of the case, (2) it is manifest error to apply Virginia law to any or all claims, and (3) the Court manifestly erred in not ruling on the applicability of RCW 48.18.080. This Order considers Plaintiff's Motion for Reconsideration,

the remaining issues raised in the parties' motions for summary judgment, and Plaintiff's Motion to Strike evidence introduced by Defendants in their supplemental brief (Dkt. # 201).

## Analysis

### a) Motion for Reconsideration

Motions for reconsideration are disfavored and will be denied "in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence." Local Rule CR 7(h)(1). Where summary judgment has been entered, "'after thoughts' or 'shifting of ground' are not an appropriate basis for reconsideration." *Fay corp. v. Bat Holdings I., Inc.*, 651 F.Supp. 307, 309 (W.D. Wash. 1987). Motions for reconsideration are not a vehicle for a litigant to attempt a second bite at the apple by raising facts or arguments available to him or her prior to the entry of summary judgment. *See Rosenfeld v. U.S. Department of Justice*, 57 F.3d 803, 811 (9th Cir. 1995)(holding that the district court did not abuse its discretion in declining to consider an argument "raised for the first time on reconsideration without a good excuse"); *Hopkins v. Anaya*, 958 F.2d 881, 887 n. 5 (9th Cir. 1992) ("A defeated litigant cannot set aside judgment because he failed to present on a motion for summary judgment all the facts known to him that might have been useful to the court.").

Because the Court fails to identify any manifest error in its Order, the Court denies Plaintiff's Motion for Reconsideration. First, Plaintiff contradicts herself in arguing that the Court erred in addressing the applicability of Virginia law as it previously applied Washington law in its Order on bifurcation (Dkt. # 41). As Plaintiff herself points out, Washington follows the rule of depecage, whereby "different issues in a single case arising out of a common nucleus of facts may be decided according to the substantive law of different states." *FutureSelect Portfolio Mgmt., Inc. v. Tremont Group Holdings, Inc.*, 175 Wash.App. 840, 856 n. 15, 309 P.3d 555 (2013). Moreover, the issue of choice of law was not before the Court when it considered Defendants' motion for bifurcation. To the extent that Plaintiff argues that Defendants waived their right to argue for the enforceability of the choice-of-law provision in Plaintiff's insurance contract, such an argument is unavailing. A party to a

contract may impliedly waive a contract provision meant for its benefit through "unequivocal acts of conduct evidencing an intent to waive." *Coastal Const. Group, Inc. v. Stellar J Corp*., 164 Wash.App. 1032, *7 (2011)(citing *Mike M. Johnson, Inc. v. Spokane County*, 150 Wn.2d 375, 386, 78 P.3d 161 (2003)). It is undisputed that no conflict of law issue had previously arisen, and thus there had been no opportunity for Defendants to waive Virginia law. Accordingly, Defendants' prior failure to assert Virginia law was not an unequivocal act evidencing their intent to waive the contractual choice of Virginia law. *See Id.*

Plaintiff further argues that the Court erred by misclassifying Plaintiff's insurance as "true group insurance." Despite characterizing her insurance policy as "group insurance" throughout litigation, Plaintiff now for the first time attempts to characterize it as a "franchise policy." Relying on dicta in *Erickson v. Sentry Life Ins. Co.*, 43 Wn. App. 651, 655 n.1, 719 P.2d 160 (1986), Plaintiff argues that her policy would then garner the choice-of-law treatment accorded to individual insurance policies. The Court declines to reconsider its treatment of Plaintiff's policy in light of her manifold admissions of group policy status, including in her answer to Defendants' counterclaim and at least 17 times throughout her pleadings, which are binding *in judicio*. *See* Dkt. # 13, ¶ 4; Dkt. 195, Ex. 1 (citing numerous instances in which Plaintiff characterized her policy as "group disability insurance" and argued for its legal treatment as such). *See also*, *Gibbs Ex Rel. Estate of Gibbs v. CIHNA Corp*, 440 F.3d 571, 578 (2d Cir. 2006)("Facts admitted in an answer, as in any pleading, are judicial admissions that bind the [party] throughout this litigation."). Plaintiff's brazen attempt to shift grounds in her characterization of her policy will not be entertained where the facts and arguments she now belatedly puts forward were clearly available to her prior to the Court's Order on summary judgment.

As to the additional contractual claims before the Court, the Court hereby clarifies that it proceeds under Washington choice-of-law analysis in making a separate determination of the applicable law governing each claim. The Court's solicitation of supplemental briefing by the parties on the results under Virginia law was necessary to make a proper choice-of-law determination. As the parties had neglected to brief the results of rescission, breach of contract, and good health provision claims under Virginia law, the Court was not previously in a position to make the required determination as to whether an actual conflict existed

between the local law of Washington and the contractually chosen Virginia law. *See Seizer*, 132 Wash.2d at 648, 940 P.2d 261 (internal citation omitted)("When parties dispute choice of law, there must be an actual conflict between the laws or interest of Washington and the laws or interests of another state before Washington courts will engage in a conflict of laws analysis."). Indeed, the Court made its approach explicit in directing the parties to include in their supplemental briefs analysis of whether Virginia or Washington law controls on each pending claim. *See* Dkt. # 194.

Finally, Plaintiff's position that the Court erred in not ruling on whether RCW 48.18.080 governs her attachment claim is clearly incorrect. The Court directly addressed the applicability of RCW 48.18.080 in its Order and adopted a position that Plaintiff herself had put forward in determining that RCW 48.21.060 governs attachment for group disability applications. *See* Dkt. # 192 at pp. 18-19; Dkt. # 190 ("RCW 48.21.060 governs that [sic] admissibility of an insurance application for group disability insurance."). Plaintiff has failed to identify any manifest error in the Court's decision that RCW 48.21.060, rather than RCW 48.18.080, governed her attachment claim under Washington law.

### b) Motion to Strike

In reply (Dkt. # 201), Plaintiff moves the Court to strike new evidence attached to and discussed in Defendants' Supplemental Brief. Dkt. # 195, p. 16:15-17; Dkt. # 196. Federal Rule of Civil Procedure 26(a)(1)(A) requires parties to disclose a copy or description of all documents and tangible things that the party has in its possession, custody or control and may use to support its claims or defenses. Initial disclosures must be made within 14 days of the parties' Rule 26(f) conference or timely supplemented pursuant to Rule 26(e). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). District courts have wide latitude to impose discovery sanctions pursuant to Rule 37(c)(1). *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

There is no dispute that Defendants neither produced the contested evidence through their initial disclosures, timely supplements, or in response to Fed. R. Civ. P. 34 document requests by Plaintiff. Rather, Defendants waited until after the discovery deadline and relevant dispositive motions deadline were past and dispositive briefs were filed to include the material for the first time with a Court-ordered supplemental brief. *See* Scheduling Order, Dkt. # 72. To permit consideration of the evidence at this stage in summary judgment would unfairly prejudice Plaintiff, who has fully briefed both pending dispositive motions and lacks any opportunity to respond to Defendants' late-submitted evidence prior to the Court's ruling. Given the completion of briefing, Defendants' multiple supplements to Rule 26(a) disclosures and in response to Rule 34 discovery requests in which this disclosure was not included, and as the evidence is outside the ambit of the Court's Order requesting supplemental briefing on Virginia law, the untimely disclosure cannot be substantially justified or harmless with respect to the pending summary judgment motions. *See National Union Fire Ins. Co. v. Greenwich Ins. Co.*, 2009 WL 272895, *3 (W.D. Wash. 2009)(striking late-disclosed expert report and declining to consider it in ruling on summary judgment). Accordingly, the evidence and discussion of it in Defendants' Supplemental Brief is STRICKEN and shall not be considered by the Court in ruling on the pending motions for summary judgment.

c) **Summary Judgment Standard**

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In determining whether an issue of material fact exists, the Court views all evidence in the light most favorable to the non-moving party and draws all reasonable interferences in that party's favor. *Id.* at 248-50; *Matsushita Elect. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets this burden, the nonmoving party must produce "enough evidence to create a genuine issue of material fact" for trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102

(9th Cir. 2000). By contrast, the moving party is entitled to summary judgment as a matter of law if the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### d) Rescission

Defendants move for summary judgment on the rescission counterclaim and affirmative defense on the grounds that Plaintiff made material misrepresentations on her Disability Insurance Application. Plaintiff also moves for summary judgment on rescission on the grounds that intent to deceive is a necessary element of rescission under Washington law and that Defendants had no evidence of intent to deceive when they determined to rescind Plaintiff's policy. The parties dispute whether Virginia or Washington law governs Defendants' rescission counterclaim.

### 1) Choice of Law

As an initial matter, the Court must determine the state law applicable to this claim. This Court, sitting in diversity, applies the choice-of-law rules of Washington. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001). The threshold question in a Washington choice-of-law analysis is whether there is an actual conflict between the laws or interests of Washington and that of another state. *Erwin v. Cotter Health Centers*, 161 Wash.2d 676, 692, 167 P.3d 1112 (2007)(citing *Seizer v. Sessions*, 132 Wash.2d 642, 648, 940 P.2d 261 (1997)). A "real conflict" exists where the result of a particular issue would be different under the law of the two states. *Id.* Absent a "real conflict," the court applies the "presumptive local law." *Id. See also*, *Carrideo v. Dell, Inc.*, 706 F.Supp.2d 1122 (2010)("Absent an actual conflict, Washington law applies.").

If an actual conflict exists and the parties selected the governing law, Washington courts apply section 187 of the Restatement (Second) Conflict of Laws (1971) to determine whether the parties' contractual choice-of-law provision is effective. Courts in Washington generally enforce choice-of-law provisions in contracts. *Schnall v. AT&T Wireless Services, Inc.* 171 Wash.2d 260, 259 P.3d 1291, 131-32(2011)(internal quotations and citations omitted). The Court disregards the contract provision and applies Washington law if three conditions are satisfied: (1) "if, without the provision, Washington law would apply"; (2) "if the chosen state's law violates a fundamental public policy of Washington"; and (3) "if

Washington's interest in the determination of the issue materially outweighs the chosen state's interest." *McKee v. AT&T Corp.*, 164 Wash.2d 372, 191 P.3d 845, 851 (2008). Choice-of-law provisions in the group insurance context present special consideration with respect to the first prong of this analysis. Unlike individual insurance policies, "[r]ights against the insurer under a group policy are generally governed by the law of the state where the master policy was delivered." *Erickson v. Sentry Life. Ins. Co.*, 43 Wash.App. 651, 719 P.2d 160, 162(1986). This rule recognizes that "it is desirable that each individual insured should enjoy the same privileges and protection." Restatement (Second) Conflict of Laws § 192, comment h (1971). *See Boseman v. Connecticut Gen. Life Ins. Co.*, 301 U.S. 196, 206, (1937)(respecting choice-of-law provisions in  group insurance contracts gives effect to the "purpose of the parties to the contract that everywhere it shall have the same meaning and give the same protection, and that inequalities and confusion liable to result from applications of diverse state laws shall be avoided.").

With regards to Defendants' rescission counterclaim, the choice-of-law inquiry at this stage of the pleadings stops at the threshold because no real conflict results under Virginia and Washington law. Virginia's rescission statute, Va. Code Ann. § 38.2-309, provides in relevant part:

> No statement in an application or in any affidavit made before or after loss under the policy shall bar a recovery under a policy of insurance unless it is clearly provided that such answer or statement was material to the risk when assumed and was untrue.

Thus under Virginia law, an insurer seeking to rescind a contract must establish two elements by clear proof: (1) that the insured's representation was false, and (2) that the false representation was material to the insured's determination to undertake the risk and issue the policy. *Banner Life Ins. Co. v. Noel*, 861 F.Supp.2d 701, 707 (E.D. Va. 2012); *Commercial Underwriters Ins. Co. v. Hunt & Calderone, P.C.*, 261 Va. 38, 540 S.E.2d 491, 493 (2001). An additional requirement is triggered where, as here, the insurer asked the insured to aver that the representations were true only to the best of her knowledge and belief. *See Parkerson v. Federal Home Life. Ins. Co.*, 797 F.Supp. 1308, 1315 (E.D. Va. 1992); Dkt. ## 146 & 150 at Ex. 2. Under such circumstances, the insurer must further demonstrate by clear proof that

the insured's statements were knowingly false in order to obtain rescission. *Old Republic Life.*
*Ins. Co. v. Bales*, 213 Va. 771, 195 S.E.2d 854, 856 (1973).

Rescission under Washington law is governed by RCW 48.18.090. The statute
contains two subsections, the first pertaining to "oral and written misrepresentation[s]…made
in the negotiation of an insurance contract," and the second to statements made in writing by
the insured in an application for life or disability insurance. *See* RCW 48.18.090. Where the
first or both sections are implicated, Washington law clearly requires that an insured may
rescind a policy upon satisfying four factors: (1) the policyholder represented as truthful
certain information during the negotiation of the insurance contract; (2) those representations
were untruthful, or misrepresentations; (3) the misrepresentations were material; and (4) the
misrepresentations were made with the intent to deceive. *See Cutter & Buck, Inc. v. Genesis*
*Ins. Co.*, 306 F.Supp. 2d 988, 997 (W.D. Wash. 2004)(citing RCW 48.18.090(1) and
discussing oral and written communications made in negotiation of insurance contract).

However, where only RCW 48.18.090(2) is implicated, "'actual intent to deceive'
does not necessarily need to be established in order to rescind the insurance agreement."
*Northwestern Mut. Life. Ins. Co. v. Koch*, 2009 WL 3346677 (W.D. Wash. 2009), *vacated in*
*part on other grounds*, 2009 WL 3674526 (W.D. Wash. 2009), *aff'd* 424 Fed.Appx. 621 (9th
Cir. 2011). *See also*, *Olson v. Bankers Life. Ins. Co. of Neb.*, 63 Wash.2d 547, 551, 388 P.2d
136 (1964). RCW 48.18.090(2) provides:

> In any application for life or disability insurance made in writing by the
> insured, all statements therein made by the insured shall, in the absence of
> fraud, be deemed representations and not warranties. The falsity of any such
> statement shall not bar the right to recovery under the contract *unless such*
> *false statement was made with actual intent to deceive or unless it materially*
> *affected either the acceptance of the risk or the hazard assumed by the insurer.*

(emphasis added). Rescission under subsection (2) requires first that a false statement be
knowingly made on the part of the insured. *Northwestern Mut. Life. Ins. Co. v. Koch*, 2009
WL 3346677 at *7 (citing *Oregon Nat. Life Ins. Co. v. Superior School Photo Service, Inc.*,
462 F.2d 1235, 1236 (9th Cir. 1977) ("To establish such falsity requires a showing that the
insured 'knowingly [made] … false statements ….'"). Once false statements have been
shown, the insurer seeking to rescind must establish that the false statements were made with

either (1) actual intent to deceive, or (2) that they materially affected either the acceptance of risk or the hazard assumed by the insurance company. *See, e.g., Olson*, 63 Wash. 2d at 551 (affirming jury instruction based on showing of either intent to deceive or materiality); *Rowley v. USAA Life Ins. Co.*, 670 F.Supp.2d 1199, 1202 (W.D. Wash. 2009)(under RCW 48.18.090(2), defendant "must demonstrate that Plaintiff: (1) made a false statement, (2) and that the statement (a) was made with an intent to deceive or (b) materially affected the acceptance of the risk or hazard [defendant] assumed."); *Tison v. American Nat. Ins. Co.*, 163 Wash. 522, 3 P.2d 998 (1931); *Oregon Nat. Life Ins. Co. v. Superior School Photo Service, Inc.*, 462 F.2d 1235, 1236 (9th Cir. 1972).

Proof that a material false statement was made knowingly raises the presumption that it was made with intent to deceive. *See Music v. United Ins. Co. of Am.*, 59 Wash.2d 765, 769, 370 P.2d 603 (1962). To overcome this presumption, plaintiff must provide some credible evidence that the false representations were not made with intent to deceive. *See Kay v. Occidental Life. Ins. Co.*, 28 Wash.2d 300, 301, 183 P.2d 181 (1947). Washington, like Virginia, provides that a misrepresentation is material if it changes the nature of the risk such that the insurance carrier either would not have issued the policy or would have charged a higher premium had the truth been known. *See Cutter & Buck Inc.*, 306 F.Supp. 2d at 997; *Chitwood v. Prudential Ins. Co. of Am.*, 143 S.E. 2d 915, 919 (Va. 1965).

As US Life's decision to insure Plaintiff was based solely on her written application, rescission in the instant case is governed under RCW 48.18.090(2). No oral or written negotiations took place that would trigger the additional requirements of RCW 48.18.090(1), and indeed could not have as Plaintiff received standardized insurance under APTA's group disability Master Policy. Thus under Washington law, as under Virginia law, intent to deceive is not a necessary element of rescission, which can also be effected upon a showing of a knowing and material misrepresentation. As the parties have not shown that application of Washington and Virginia law would lead to a different outcome on rescission at this juncture, the Court applies Washington law to Defendants' rescission counterclaim for the purpose of the pending summary judgment motions.

**2) Scope of Misrepresentations**

The parties dispute to what extent Plaintiff misrepresented information on her Disability Application. Defendants contend that Plaintiff made wide-ranging misrepresentations in response to questions 2 and 3 of her Application, including through her failures to disclose neck and back pain, menstrual disorder, recurrent headaches, chronic fatigue, thyroid disorder, mental or emotional problems, and treatment and consultations with various physicians and clinics. Defendants also contend that Plaintiff misrepresented her polyp treatment on the Application and in response to a follow-up questionnaire. In response, Plaintiff contests that any misrepresentations were made and further moves the Court to preclude Defendants from invoking any allegations other than nondisclosure of joint and musculoskeletal disorders, which were the sole grounds for voiding coverage provided by American Life in its letter rescinding coverage. *See* Dkt. # 144, Ex. N (notifying Plaintiff that US Life was rescinding coverage on the basis of Plaintiff's omitted history of joint and musculoskeletal disorders, including her clinical reports of shoulder pain, low back pain, ligamentous laxity in pelvic and neck area, and lumbar spondylolisthesis).

Both Washington and Virginia recognize a common law doctrine known as "mend the hold," which precludes an insurer from changing the basis for avoiding liability after the onset of litigation. *See, e.g., White v. Bott*, 158 Va. 442, 454 (1931)(citing *Ohio & M.R. Co. v. McCarthy*, 96 U.S. 258, 267 (1877)); *Vision One, LLC v. Phila. Indem. Ins. Co.*, 174 Wn.2d 501, 520, 276 P.3d 300 (2012)("A provision must be asserted as a basis for denying coverage, and during litigation insurers may be precluded from asserting new grounds for denying coverage."). The mend the hold doctrine has roots in the Supreme Court's decision in *Railway Co. v. McCarthy*, in which the Court declared that:

> Where a party gives a reason for his conduct and decision touching any thing involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law.

96 U.S. 258, 267 (1877). This doctrine has been extended in the insurance context in a number of states to prevent insurers from shifting the grounds for non-performance from the reasons stated in the insurer's declination letter. *See* Robert H. Sitkoff, *"Mend the Hold" and*

*Erie: Why An Obscure Contracts Doctrine Should Control in Federal Diversity Cases*, 65 U. Chi. L. Rev. 1059 (1998).

Under Washington law, the mend the hold doctrine may be invoked to preclude insurers from introducing new or changed bases for denying insurance coverage once litigation has begun. *See Ledcor Industries (USA) Inc. v. Virginia Sur. Co., Inc.*, 2012 WL 223904, at \*2 (W.D. Wash. 2012)(precluding changed basis). To prevail under this form of estoppel, the insured must demonstrate that she "either suffered prejudice or the insurer acted in bad faith when the insurer failed to raise all its grounds for denial in its initial denial letter." *Hayden v. Mutual of Enumclaw Ins. Co.*, 141 Wash.2d 55, 63, 1 P.3d 1167 (2000). *See also*, *Bosko v. Pitts & Still, Inc.*, 75 Wash.2d 856, 454 P.2d 229 (1969)("[I]t is the general rule that if an insurer denies liability under the policy for one reason, while having knowledge of other grounds for denying liability, it is estopped from later raising the other grounds in an attempt to escape liability, provided that the insured was prejudiced by the insurer's failure to initially raise the other grounds."). "An insurer is charged with the knowledge which it would have obtained had it pursued a reasonably diligent inquiry." *Id.*

Application of the factors for mend the hold estoppel precludes Defendants from changing their grounds for rescission from those that they stood on prior to the onset of litigation. American General investigated Plaintiff's claim for benefits from as early as June 2009 until issuing the denial letter nearly a year later. American General's contestable review took place over a span of at least six months, from the point that it received Plaintiff's Disability Claim Questionnaire about her medical and treatment history in November 2009. *See* Dkt. # 144, Ex. G.  As required under Washington law, American General then provided a reasoned explanation for denying Plaintiff's claim and rescinding her policy in its formal denial letter issued on May 11, 2010. *See* WAC 284-30-330(13) (requiring insurer to "provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim."); RCW 48.30.105(5)(a). Had there been additional bases for rescinding Plaintiff's coverage, American General should have notified Plaintiff of them at this stage, following its extensive period of review. Instead, Defendants failed to do so until well after litigation began and they had answered Plaintiff's complaint, formally asserting them only upon summary judgment. *See, e.g.*, Dkt. # 10, p. 23, ¶¶ 7-10. Plaintiff is clearly

prejudiced by Defendants' shifting grounds in that she brought her complaint on the basis of American General's denial letter and prepared her case with the understanding that her claim was denied solely due to alleged failure to disclose joint or musculoskeletal disorders.

The Court disagrees with Defendants that their reservation of rights in their declination letter was sufficient to preserve additional bases for rescission. Such a stance is contrary to Washington statutory law, WAC 284-30-330(13), and has never been acknowledged by either Washington or Virginia courts as a means to overcome estoppel. *C.f. In re Aberdeen 100, Inc.*, 1995 Bankr LEXIS 1032, *11 (D. Vt. 1995)(defendant insurance company "waived nothing" because it had "specifically 'reserve(d) its rights to disclaim coverage'" under additional grounds).

Accordingly, the Court considers first whether Plaintiff knowingly misrepresented her history of joint and musculoskeletal disorders on her Application. Defendants contend that Plaintiff knowingly misrepresented this history when she answered "No" under Question 2(b) of her Application. Question 2(b) asked, "Have you ever had or been treated for…injury, pain or disorder of the neck or back? Sciatica? Any disabling injury?" As evidence of misrepresentation, Defendants point to numerous admissions regarding a history of neck and back pain and related physical therapy that Plaintiff made in her deposition. When questioned whether she knew when she filled out her Disability Application in February 2009 that she had experienced muscular back pain, she responded, "I knew that I had experienced at some point some muscular back pain, yes." Dkt. # 150, Ex. 1, pp. 139. Plaintiff further admitted that she underwent 25 physical therapy sessions from November 13, 2007 to July 30, 2008, for which she billed her health insurer. *Id*. at pp. 139, 163. Plaintiff admitted to disclosing a history of back pain to her physical therapist, Caryn Pierce, in November 2007, though she contested that the pain was the subject of her visit. *Id.* at p. 56. In her deposition, Pierce corroborated that Plaintiff had been experiencing back pain and occasional neck pain at this time, including while treating her patients. *Id.* at Ex. 4, pp. 69, 79. Pierce explained that Plaintiff herself discovered in a techniques class that she was suffering "symptoms of a somatic dysfunction, which is localized point tenderness and active tension held…in the muscles even when she was at rest and that it prevented full mobility." *Id.* at p. 72.

Defendants further point to Plaintiff's clinical reports of neck and back pain and disorder. Plaintiff, for instance, checked "yes" to experience of "back pain" since her previous visit on a Return Patient Form when visiting her doctor on February 13, 2007. *Id.* at Ex. 3. In February 2008, Plaintiff began seeing physical therapist Fawn Coussens for low back pain, which she indicated on an Initial Evaluation Intake Form that she was experiencing more than four times a day and which was severe enough to awaken her at night. *Id.* at Ex. 6, p. 44 (Plaintiff "was complaining of low back pain" when she presented for physical therapy on February 6, 2008); Ex. 8. Plaintiff continued to treat for back pain with Ms. Coussens through spring of 2008. *See Id.* at Ex. 6, p. 95. Plaintiff reported similar musculoskeletal pain to her naturopath, Dr. Nina Paroo, in July 2008. She also informed Dr. Paroo that she had spondylolisthesis, or displacement of a vertebrae. *Id.* at Ex. 13, pp. 14-15, 23-24. Plaintiff admitted to knowing of these physical therapy sessions in her "subconscious mind" when filling out her Disability Application. *Id.* at Ex. 1, p. 241.

As an initial matter, the Court finds that Plaintiff averred to the truthfulness of the statements in her Application. Her Application contained the following clause:

> "To the best of my knowledge and belief, all statements I made above are true and complete. I understand that my application for group insurance will be accepted or declined on the basis of these statements."

Plaintiff's signature on the Application several lines below this clause satisfies the first *Cutter & Buck* factor. *See Cutter & Buck*, 306 F.Supp.2d at 997; *Northwestern Mut. Life. Ins. Co.*, 2009 WL 3346677 at *7. As to the untruthfulness of her answer to question 2(b), Plaintiff's history of seeking out physical therapeutic treatment for neck and back pain, her own acknowledgment of musculoskeletal disorder, and her indications of recurring pain to multiple treatment providers (including a physician) establish through clear, cogent, and convincing evidence that she misrepresented her history of neck and back pain or disorder. Plaintiff has failed to introduce any evidence that contradicts this finding. Although Plaintiff disclaims in her affidavit making misrepresentations to US Life, her conclusory testimony alone is insufficient to raise a genuine issue of fact to defeat summary judgment. *See Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F.3d 337, 345 (9th Cir. 1995). Neither is her objection that she did not believe that she was being treated for any undisclosed

disorder. The Application unambiguously asks for disclosure of neck and back pain as well as disorder. Thus even accepting as true Plaintiff's belief that she did not have a neck or back disorder, she still fails to contradict the extensive evidence suggesting regular and persistent pain.

### 3) Intent to Deceive

Whether a misrepresentation is made with intent to deceive is a question of fact. *Wilburn v. Pioneer Mutual Life Ins. Co.*, 8 Wash.App. 616, 620, 508 P.2d 632 (1973). Nonetheless, where an "insured knowingly makes a false statement, courts will presume that the insured intended to deceive the insurance company." *Ki Sin Kim*, 153 Wash. App. 339, 355, 223 P.3d 1180 (2009), *citing Kay v. Occidental Life Ins. Co.*, 28 Wash. App.2d 300, 183 P.2d 181 (1947). The insured can overcome this presumption by establishing "an honest motive or an innocent intent." *Ki Sin Kim*, 153 Wash. App. at 355. The insured must introduce "credible evidence" rather than relying on a "bare assertion that she did not intend to deceive the insurance company." *Id.* A mere denial is not sufficient. *Am. Fidelity & Cas. Co. v. Backstrom*, 47 Wash.2d 77, 84, 287 P.2d 124 (1955).

As discussed supra, Defendants have introduced clear, convincing, and credible evidence to establish that Plaintiff knowingly misrepresented her history of neck and back pain or disorder. Plaintiff contends that the ensuing presumption disappears in light of evidence of her innocent intent or honest motive. As evidence of her innocent intent, Plaintiff contends that: (1) she did not seek out disability insurance from US Life, (2) she did not apply for the maximum allowable benefits, (3) she freely signed all authorizations for release of information, (4) she fully cooperated during the claim investigation, (5) she openly informed American General of her physical therapy in response to a medical questionnaire, and (6) she was never diagnosed with any joint or musculoskeletal disorders. *See* Dkt. # 170, pp. 27-28.

Viewing the evidence in the light most favorable to the non-moving party, Plaintiff has introduced sufficient evidence of innocent intent such that a jury should determine this prong as a question of fact. The presumption of intent to deceive is not itself evidence but merely a presumption that shifts the burden of producing prima facie evidence of innocent intent to Plaintiff. *See Kay*, 28 Wash.2d at 303. Where there is "credible evidence from which a jury could conclude that the alleged misrepresentations…were made without 'intent to

deceive,'" the presumption of intent disappears. *Music v. United Ins. Co. of America*, 59 Wn.2d 765, 769 (1962). Such is the case here. In addition to the other indicia of innocent intent that she has introduced, the fact that Plaintiff never claimed benefits related to neck and back pain or disorder further rebuts dishonest motive. As does the fact that Plaintiff is a doctor of physical therapy herself and often participated in sessions as part of her training. As in a case where an applicant "could reasonably have believed that the misrepresented health condition was cured," Plaintiff could have believed that her pain and physical therapeutic treatment did not rise to a level that would mandate reporting on her Application. *See Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.*, 19 F.3d 431, 435 (8th Cir. 1994). While Defendants have introduced evidence of knowing misrepresentations, they have not presented direct evidence that Plaintiff specifically intended to deceive US Life when filling out her insurance Application. Where there is no evidence establishing intent as a matter of law, intent to deceive is a jury question," and summary judgment is not warranted as to Plaintiff's intent to deceive. *Id.*

Plaintiff also argues that Defendants should be precluded from arguing intent to deceive as they failed to specifically raise Plaintiff's intent as grounds for rescission prior to litigation. *See* Dkt. # 142, pp. 12-13. The Court disagrees. Plaintiff has not pointed to any case in which a Washington court required an insurance company to specifically cite to "intent to deceive" in its denial letter. The Court finds that Defendants sufficiently notified Plaintiff that they would argue this element when they informed her that they were rescinding her Application due to misrepresented history of joint and musculoskeletal disorders. Plaintiff consequently was not prejudiced by Defendants' failure to specifically assert her intent to deceive. As it finds that Defendants are not estopped from asserting intent to deceive as grounds for rescinding coverage, the Court also denies Plaintiffs' Motion for Partial Summary Judgment on this prong.

### 4) Materiality

As discussed supra, Defendants may still rescind Plaintiff's coverage if they can establish through clear, cogent, and convincing evidence that Plaintiff's misrepresentations were material. *Queen City Farms v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wn.2d 50, 97 (1994). A representation made in conjunction with an insurance application is material if the

representation influenced the insurance company's decision to issue the coverage. *Id.* at 100; *Cutter and Buck*, 306 F.Supp.2d at 1003.

The materiality of a misrepresentation is typically a question of fact. *Cutter and Buck*, 306 F.Supp.2d at 1003; *Olson v. Bankers Life Ins. Co.*, 63 Wash.2d 547, 552, 388 P.2d 136 (1964); *Allstate Insurance Co. v. Huston*, 123 Wn.App. 530, 539-40 (2004). Defendants, however, rely on *Cutter & Buck* to argue for an exception to this general rule. For instances where an insurer specifically asks for information in regard to a certain matter, Defendants contend that Washington law provides a presumption that the matter is material. *See Cutter & Buck*, 306 F.Supp.2d at 1003.

Defendants' reliance on *Cutter & Buck* is misplaced. The *Cutter & Buck* court was interpreting a decision by a Washington Court of Appeals, which found that "when an insurer asks no information in regard to a certain matter, it is a fair assumption that it regards the matter as immaterial." *USlife Credit Ins. Co. v. McAffee*, 29 Wash.App. 574, 577, 630 P.2d 450 (1981). *Cutter & Buck* interpreted *USlife* to "impl[y]" that a similar presumption holds when an insurer inquires into certain matters, specifically an insured's financial statements. Significantly, the *Cutter & Buck* court's decision was bolstered by non-Washington cases that addressed the materiality of an insured's financial statements for D&O insurance. *Cutter & Buck* did not extend such a presumption to all questions, including the panoply of broadly worded health history questions on Plaintiff's Application. The *USlife* court, in creating a presumption of immateriality, was concerned with preventing precisely the "kind of post-claim underwriting" allegedly at issue in the instant case, through which insurers use "20-20 vision of hindsight to seek out prior health problems in order to try and defeat" any claim presented. *USlife Credit*, 29 Wn.App. at 581. Moreover, Plaintiff has rebutted any presumption that would arise by producing evidence that US Life lacks underwriting guidelines concerning musculoskeletal disorders and that US Life has issued policies to APTA members who disclosed history of physical therapy treatment. Dkt. # 171, Ex. B (US Life 30(b)(6) deponent "cannot recall" any underwriting guidelines concerning musculoskeletal disorders); Dkt. # 199, Ex. Z, p. 3.

The touchstone of the materiality inquiry is whether the information in question measures the risk that the insurer assumes. *Cutter & Buck*, 306 F.Supp. at 1003, citing *Verex*

*Assurance, Inc. v. John Hanson Savings and Loan, Inc.*, 816 F.2d 1296, 1302 (9th Cir. 1987). Unlike in *Cutter & Buck*, Defendants in the instant matter have not introduced evidence sufficient to establish as a matter of law that the allegedly omitted medical history, such as Plaintiff's sessions with a physical therapist for back pain, actually bear on the insurer's risk and consequent decision to issue coverage. Defendants rely entirely on conclusory statements, unsupported by specific facts, by underwriter Lydia Labinsky that coverage would have been declined but for each omission. *Compare* Labinsky Affidavit, Dkt. # 147 (testifying that US Life would not have issued disability coverage had it known the details of Plaintiff's physical therapy treatment) *with* Labinksy Deposition, Dkt. # 171, Ex. H, p. 86 (failing to recall ever declining to issue coverage to an APTA member because the applicant disclosed a history of physical therapy). Without documentation of US Life's medical underwriting practices or indeed any evidence of the bearing that it considers Plaintiff's undisclosed history to have on risk, Defendants fail to establish the absence of a material fact as to the materiality of the alleged misrepresentations. *See Carpinone v. Mut. of Omaha Ins. Co.*, 97 N.Y.S.2d 381, 382 (1999)(explaining that for an insurer "to establish the materiality of a misrepresentation as a matter of law, it was required to present documentation concerning its underwriting practices such as underwriting manuals, rules or bulletins which pertain to insuring similar risks."). The possibility that Defendants are engaging in post-claim underwriting provides an additional reason to deny summary judgment. *See Rowley*, 670 F.Supp. 2d at 1206-7.

**e)  Good Health Provision**

Defendants further argue that Plaintiff's change in insurability and health prior to the payment of her first premium voids coverage. Defendants rely on a "good health" provision of Plaintiff's Insurance Application, which states:

> "Insurance will take effect only if the certificate is issued based on this application and the first premium is paid in full while there is no change in the insurability or health of such person from that stated in the application."

*See* Dkt. # 145, p. 26. Washington and Virginia courts have construed good health clauses in insurance applications as a condition precedent to recovery on the policy. *See Williams v. Metropolitan Life. Ins. Co.*, 10 Wash. App. 600, 603, 519 P.2d 1310 (1974); *Hamond v. Pacific Mut. Life Ins. Co.*, 159 F.Supp.2d 249, 254 (E.D. Va. 2001). As the parties have not

identified a real conflict on this issue, the Court applies Washington law.

As an independent ground for voiding coverage, Defendants were required to inform Plaintiff of their enforcement of the good health provision prior to litigation. As they failed to do so, they are not permitted to mend the hold and shift their grounds for rescission at this late stage. *See Vision One, LLC*, 174 Wn.2d at 520. Regardless, issues of material fact remain as to both the date on which Plaintiff's health materially changed and the date on which her premium was paid. *See* Dkt. # 168, ¶ 2; Karpenski Deposition, Dkt. # 171, Ex. 19, p. 193 ("I'm not sure when [the first premium] was paid). As Plaintiff's Welcome Packet contained merely a secure pay authorization form rather than a billing statement, it does not substantiate the date of Plaintiff's first premium payment. *See* Dkt. # 143, Ex. A., p. 8. Summary judgment is accordingly denied on Defendants' good health clause claim.

**f) Breach of Contract**

As neither party identifies a conflict between Virginia and Washington law regarding breach of contract, the Court also analyzes this claim under Washington law. The elements of a breach of contract claim are: (1) the existence of a valid contract, (2) breach of that contract, and (3) damages resulting from the breach. *See Wells Fargo Bank N.A. v. Gerung*, 2013 WL 6061592, *3 (W.D. Wash. 2013)(*citing Fid. & Deposit Co. of Maryland v. Dally*, 1487 Wash.App. 739, 201 P.3d 1040, 1044 (2009)). Washington recognizes that a rescinded policy voids it *ab initio*. *See Russell v. Stephens*, 191 Wash. 314, 71 P.2d 30, 31 (1937) ("When a contract is legally rescinded, the parties are restored to their status quo generally…."). As the Court has denied summary judgment on Defendants' rescission claim, it cannot yet reach Plaintiff's breach of contract claim as a matter of law. Accordingly, summary judgment as to this claim is denied.

**Conclusion**

For the reasons stated herein, the Court hereby finds and ORDERS that:

(1) Plaintiff's Motion for Reconsideration (Dkt. # 197) is DENIED.

(2) Plaintiff's Motion to Strike (Dkt. # 201) is GRANTED. The Court STRIKES new evidence at Dkt. # 196 and accompanying text at Dkt. # 195, p. 16:15-17.

ORDER ON MOTIONS - 19

(3) Defendants' Motion for Summary Judgment (Dkt. # 145) is DENIED as disputed issues of material fact remain as to Plaintiff's intent to deceive and the materiality of her misrepresentations as to her history of joint and musculoskeletal disorders. Defendants' Motion is also DENIED with respect to Plaintiff's violation of her Application's good health clause as Defendants are estopped from introducing this new basis for rescission post-litigation.

(4) Plaintiff's Motion for Partial Summary Judgment (Dkt. # 142) is DENIED as to her claim to preclude Defendants from arguing intent to deceive and DENIED as to her claim for breach of contract.

Dated this 2nd day of April 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE